DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| KWANZA DELAGARDE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 3:20-cv-0093 |
| v. ) | |
| ) | ACTION FOR NEGLIGENCE, |
| TOURS VI LTD. and RAJIR PICKERING, ) | GROSS NEGLIGENCE |
| ) | |
| Defendants. ) | |
| ) | |

APPEARANCES:

**Ryan W. Greene, Esq.**
St. Thomas, U.S.V.I.
   *For Plaintiff Kwanza DeLagarde.*

## MEMORANDUM OPINION

**MOLLOY, C.J.**

**THIS MATTER** comes before the Court upon the motion of Plaintiff Kwanza DeLagarde ("DeLagarde") for default judgment against Defendant Tours VI LTD. ("Tours VI"). (ECF No. 14.) For the reasons stated below, the Court will deny the motion and dismiss the complaint.

### I.  FACTUAL AND PROCEDURAL BACKGROUND

On or about June 16, 2019, DeLagarde, "an adult resident of St. Thomas, U.S. Virgin Islands," was a passenger on the BellArosa, a vessel of VI Tours. (ECF No. 1 at 1, ¶ 2.) Rajir Pickering ("Pickering"), "a resident and citizen of Tortola, British Virgin Islands," *id.* at 1, ¶ 4, was captain of the vessel. Tours VI, the owner of the vessel, "is a foreign corporation domiciled in the British Virgin Islands." *Id.* at 1, ¶ 3.

At approximately 5:20 p.m., during the tour's final stop at Great Harbour, on Peter Island in the British Virgin Islands, Pickering started the vessel's engine while DeLagarde was exiting the water from the back of the vessel near the propellers. DeLagarde alleges that, while attempting to make his way up the back steps of the vessel, "[t]he propellers made contact with [DeLagarde's] body including his legs and backside, causing severe and permanent injuries as well as severe and permanent disfigurement to his body." *Id.* at 2, ¶ 9.

DeLagarde commenced this action with the filing of a complaint on September 21, 2020. (ECF No. 1)*.* In the complaint, DeLagarde alleges causes of action for negligence and gross negligence under the doctrine of *respondeat superior*. DeLagarde argues that Pickering had an obligation "to maintain, inspect and to ensure that the vessel [was] in a reasonably safe condition for individuals that were passengers, and in the water near it . . . ." *Id.* at 3, ¶ 16. He contends that Pickering breached this duty, and that DeLagarde was injured as a result. Moreover, DeLagarde alleges gross negligence because Defendants exhibited a "conscious indifference to the consequences of their conduct or act[ing] so unreasonably in operating a vessel as complained of herein by engaging the engine and propeller without having clearance to do so [ ] with swimmers in the water." *Id.* at 5, ¶ 25.

In his complaint, DeLagarde states he "has been damaged in amounts to be proven at trial as alleged herein." *Id.* at 5, ¶ 26. DeLagarde "prays for damages as they may appear, for pre and post judgment interest, and costs and fees, and for such other relief as this court deems appropriate, including punitive damages if warranted by the facts." *Id.* at 6. There is no further documentation provided nor any amount of damages specified in the pleadings.

Defendants were served in the British Virgin Islands ("BVI") on September 29, 2020. Defendants did not answer or appear. On January 20, 2021, DeLagarde filed a motion for default judgment against Tours VI, pursuant to Fed. R. Civ. P 55(b)(2). (ECF No. 9.)

On January 25, 2021, DeLagarde filed a notice of withdrawal of the motion for default judgment, ECF No. 11, and refiled a motion for entry of default against Tours VI, pursuant to Fed. R. Civ. P. 55(a), ECF No. 12. On March 16, 2021, DeLagarde filed the instant motion for default judgment against Tours VI, pursuant to Fed. R. Civ. P. 55(b)(2). Subsequently, the Clerk of Court filed an entry of default against Tours VI on June 11, 2021. (ECF No. 16.)

DeLagarde has not filed an amended complaint nor proceeded with a motion for entry of default against co-defendant Pickering.

## II. LEGAL STANDARD

Once a court has entered default against a defendant, Rule 55(b)(2) of the Federal Rules of Civil Procedure allows the court to enter a default judgment against the properly served defendant who failed to plead or otherwise defend. *Anchorage Assocs. v. V.I. Bd. of Tax*

*Review*, 922 F.2d 168, 177 n.9 (3d Cir. 1990) (explaining that under Rule 55, the court has the authority to enter a default judgment "based solely on the fact that the default has occurred"). While the court has discretion to enter a default judgment, the Third Circuit prefers that courts adjudicate cases on the merits when possible. *See Feliciano v. Reliant Tooling Co., Ltd.*, 691 F.2d 653, 656 (3d Cir. 1982); *see also Catanzaro v. Fischer*, 570 Fed. App'x. 162, 165 (3d Cir. 2014).

In considering a motion for default judgment, the court deems the factual allegations in the complaint as conceded by the defendant, other than those relating to the amount of damages. Fed. R. Civ. P. 8(b)(6); *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990) (explaining that "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true"). Further, in deciding whether to grant a default judgment, the District Court:

> must consider the following three factors: (1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; and (3) whether the default was the result of the defendant's culpable conduct.

*Gold Kist, Inc. v. Laurinburg Oil Co., Inc.*, 756 F.2d 14, 19 (3d Cir. 1985) (citing Fed F. Civ. P. 60(b)(1)) (collecting cases)).

### III. DISCUSSION

A court's authority to adjudicate a case on the merits depends on the court having jurisdiction over the claim (subject matter jurisdiction). *Ruhrgas Ag v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999). Accordingly, "[t]he requirement that jurisdiction be established as a threshold matter . . . is inflexible and without exception,' for 'without jurisdiction the court cannot proceed at all in any cause." *Id.* (quoting *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 94-95 (1998)) (internal quotations and citations omitted).

#### A. Subject Matter Jurisdiction

Before entering a default judgment against a party who has failed to plead or otherwise defend, the district court has an obligation to consider whether the court has jurisdiction over the subject matter. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006) ("[C]ourts . . . have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.") (citing *Ruhrgas Ag*,

526 U.S. at 583); *see also Dambach v. United States*, 211 Fed. App'x. 105, 109 (3d Cir. 2006). Because subject matter jurisdiction "involves a court's power to hear a case, [it] can never be forfeited or waived." *United States v. Cotton*, 535 U.S. 625, 630 (2002). Where the court finds that it does not have subject matter jurisdiction over a matter, the court must dismiss the claim. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Arbaugh*, 546 U.S. at 514 ("[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety.").

For subject matter jurisdiction to exist, a district court must have either federal question jurisdiction, diversity jurisdiction, or admiralty/maritime jurisdiction over the matter. None of these bases for jurisdiction appear in this case.

Here, Plaintiff DeLagarde asserts that the Court "has jurisdiction over this matter pursuant to Title 4 V.I.C. § 76(a)," ECF No. 1 at 1, which provides:

> (a) Subject to the original jurisdiction conferred on the District Court by section 22 of the Revised Organic Act of 1954, as amended, effective October 1, 1991, the [Virgin Islands] Superior Court shall have original jurisdiction in all civil actions regardless of the amount in controversy; to supervise and administer estates and fiduciary relations; to appoint and supervise guardians and trustees; to hear and determine juvenile, divorce, annulment and separation proceedings; to grant adoptions and changes of name; to establish paternity; to legitimize children and to make orders and decrees pertaining to the support of relations.

4 V.I.C. § 76(a).[1] This section is a provision under the laws of the Virgin Islands enacted by the Legislature of the Virgin Islands. A Virgin Islands statute cannot confer jurisdiction on a federal court. *Callwood v. Enos*, 230 F.3d 627, 632 (3d Cir. 2000) ("We have previously held that to the extent that Virgin Islands Code provisions vest jurisdiction in the District Court, they have been implicitly repealed."); *see also Coastal Air Lines, Inc. v. Dockery*, 180 F.2d 874,

---

[1] Effective October 1, 1991, 4 V.I.C. § 76(a) divested the District Court of the Virgin Islands of jurisdiction over local civil actions. *Gillette v. Herbert*, No. SX-14-CV-439, 2017 V.I. LEXIS 27, at *2 (Sup. Ct. Feb. 16, 2017). *See also Parrott v. V.I.*, 230 F.3d 615, 620 (3d Cir. 2000) ("[Section] 1613 of the Revised Organic Act acts in combination with § 76(a) of the V.I. Code to effectively repeal any grant of concurrent jurisdiction to the District Court over local actions once the Virgin Islands Legislature has vested jurisdiction over local civil actions in the Territorial Court.")

877 (8th Cir. 1950) (holding that "questions of jurisdiction . . . are determined by Federal law"). Because only federal law may vest jurisdiction in a district court, the Plaintiff must establish that the Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331—federal question jurisdiction, 28 U.S.C. § 1332—diversity jurisdiction, or 28 U.S.C. § 1333—admiralty or maritime jurisdiction.

1. *Federal Question Jurisdiction*

District courts have federal question jurisdiction over civil cases arising under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. *See City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 163 (1997) (explaining that a court has federal question jurisdiction "only when the plaintiff's well-pleaded complaint raises issues of federal law") (quoting *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987)). DeLagarde does not argue or allege that his claim arises under the Constitution, nor under any federal law or treatise. Consequently, DeLagarde has not shown that the Court has federal question jurisdiction over the matter pursuant to 28 U.S.C. § 1331.

2. *Diversity Jurisdiction*

There is also no indication that there is diversity of citizenship in this case. Courts have diversity jurisdiction over civil actions in which the amount claimed in controversy exceeds $75,000 and the parties are, *inter alia*, citizens of different states or territories;[2] or citizens of a state or territory and citizens or subjects of a foreign state. 28 U.S.C. § 1332. It is well established that at least one of the parties in a civil suit must be a United States citizen of a state or territory in order for a court to have diversity jurisdiction over the suit. *Mossman v. Higginson*, 4 U.S. 12, 14 (1800) (expounding that where a foreigner is a party, a citizen of the United States must also be a party. As such, "[a] description of the parties is, therefore, indispensable to the exercise of jurisdiction"); *Jackson v. Twentyman*, 27 U.S. 136, 136 (1829)

---

[2] 28 U.S.C. § 1332 provides in relevant part:

> "district courts shall have original jurisdiction of all civil actions" between "citizens of different States." 28 U.S.C. § 1332(a). According to § 1332(d), the "word 'States,' as used in this section, includes the Territories, the District of Columbia, and the Commonwealth of Puerto Rico." Accordingly, the Territory of the Virgin Islands, a United States Territory, qualifies as a "state" for purposes of the diversity jurisdiction statute.

*Brown v. Francis*, 75 F.3d 860, 865 (3d Cir. 1996).

(holding that there was no jurisdiction where one party was a subject of the king of Great Britain and the other parties' citizenship was not disclosed, stating, "the judicial power was not extended to private suits in which an alien is a party, unless a [U.S.] citizen be the adverse party. It was indispensable therefore to aver the citizenship of the defendants, in order to show on the record the jurisdiction of the court."); *see also Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989) ("In order to be a citizen of a State within the meaning of the diversity statute, a natural person must both be a citizen of the United States *and* be domiciled within the State [or territory].") (emphasis original). It is therefore not sufficient to claim only the residency of parties, without stating citizenship, for purposes of diversity jurisdiction. *Everhart v. Huntsville College*, 120 U.S. 223, 224 (1887) (finding that the averment of plaintiff's residence was "not enough . . . for the purposes of jurisdiction," which "depends alone on the citizenship of the parties"); *Hodgson v. Bowerbank*, 9 U.S. (5 Cranch) 303, 304 (1809) (emphasizing that the court had no jurisdiction over the case because one of the defendants was not expressly described as a citizen of one of the United States, Chief Justice Marshall instructed, "[t]urn to the article of the constitution of the United States, for the statute cannot extend the jurisdiction beyond the limits of the constitution. The words of the constitution were found to be 'between a state, or the citizens thereof, and foreign states, citizens or subject'") (citing U.S. Const. art. III, § 2, cl. 1.); *Pierro v. Kugel*, 386 Fed. App'x. 308, 309 (3d Cir. 2010) (explaining that the determination of whether diversity jurisdiction exists requires examination of the citizenship, rather than merely the residence, of each party at the time the complaint was filed).

Additionally, a district court does not have diversity jurisdiction over a suit in which a lawful permanent resident of the United States and a non-resident foreign citizen are opposing parties.[3] *Tagger v. Strauss Grp. Ltd.*, 951 F.3d 124, 127 (2d Cir. 2020) ("Accordingly,

---

[3] A 1988 amendment to the diversity statute, 28 U.S.C. § 1332, referred to as the "deeming provision," stated that "an alien admitted to the United States for permanent residence shall be deemed a citizen of the State in which such alien is domiciled." Pub. L. No. 100-702, § 203(a), 102 Stat. 4642, 4646 (1988). The result was a circuit split over whether the court would have diversity jurisdiction over matters in which lawful permanent residents sued other non-citizens (who were either permanent residents or foreign residents). *Compare Singh v. Daimler-Benz AG*, 9 F.3d 303, 306-12 (3d Cir. 1993) *with Saadeh v. Farouki*, 107 F.3d 52, 60-61 (D.C. Cir. 1997).

*DeLagarde v. Tours VI, LTD et al.*
Case Number 3:20-cv-0093
Order
Page 7 of 10

because federal courts do not have diversity jurisdiction over lawsuits between two foreign parties, we conclude that section 1332(a)(2) does not give the district court jurisdiction over a suit by a permanent resident against a non-resident alien.")[4] Therefore, a plaintiff must assert the citizenship of each party to the suit as of the time the complaint is filed. *Everhart*, 120 U.S. at 224 (clarifying that the pleadings must assert the citizenship of the parties "at the time the suit was brought").

The other component of diversity jurisdiction is the amount claimed in damages. The court looks to the complaint itself to determine the amount in controversy. *Angus v. Shiley, Inc.*, 989 F.2d 142, 145 (3d Cir. 1993). "Where the cause of action is based on diversity jurisdiction, the complaint must allege an amount in controversy between the parties in excess of the statutory minimum" of $75,000. *Golden v. Golden*, 382 F.3d 348, 354 (3d Cir. 2004). To invoke diversity jurisdiction, the plaintiff must establish in the complaint—to a legal certainty—that his claims exceed $75,000. *Auto-Owners Ins. Co v. Stevens & Ricci, Inc.*, 835 F.3d 388, 395 (3d Cir. 2016).

The complaint in this matter makes no mention of the amount in controversy. Furthermore, DeLagarde does not provide his own citizenship. As such, the complaint establishes neither a sufficient amount in controversy nor the requisite diversity between the parties to satisfy diversity jurisdiction under 28 U.S.C. § 1332.

---

In 2011, section 1332 was again amended by the Federal Courts Jurisdiction and Venue Clarification Act, which removed the deeming clause. The 2011 amendment provided that federal courts had diversity jurisdiction in cases between

> citizens of a State and citizens or subjects of a foreign state, except that the district courts shall not have original jurisdiction under this subsection of an action between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States and are domiciled in the same State.

Pub. L. No. 112-63, § 101, 125 Stat. 758 (2011). Further,

> [t]he House Report accompanying the 2011 bill stated that the amendment was intended to ensure that permanent resident aliens "would no longer be deemed to be U.S. citizens for purposes of diversity jurisdiction, thereby avoiding the possibly anomalous results" with respect to the 1988 language. H.R. Rep. No. 112-10, at *7 (2011).

*Tagger v. Strauss Grp Ltd.*, 951 F.3d 124, 127 (2d Cir. 2020).

[4] In the years since Congress amended the diversity statue in 2011, the Court of Appeals for the Third Circuit has not ruled on the issue of permanent residents suing non-resident foreign citizens.

*DeLagarde v. Tours VI, LTD et al.*
Case Number 3:20-cv-0093
Order
Page 8 of 10

### 3. Admiralty or Maritime Jurisdiction

Similarly, the pleading does not establish admiralty or maritime jurisdiction, and Plaintiff's jury demand, ECF No. 1-3, further indicates that such jurisdiction is not appropriate in this matter under 28 U.S.C. § 1333. Where a case sounds in admiralty and does not also establish subject matter jurisdiction through federal question or diversity jurisdiction, the case may not be tried by jury. *Colgrove v. Battin*, 413 U.S. 149, 155 n.9 (1973); *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 247 (3d Cir. 2013) ("Admiralty suits are not "Suits at common law,' which means that when a district court has only admiralty or maritime jurisdiction under 28 U.S.C. § 1331(1), the plaintiff does not have a jury-trial right.") (citing *Complaint of Consolidation Coal Co.*, 123 F.3d 126, 132 (3d Cir. 1997)).

District courts have original jurisdiction of any civil case of admiralty or maritime jurisdiction. 28 U.S.C. § 1333(1). To establish admiralty or maritime jurisdiction, the plaintiff must show that "a potential hazard to maritime commerce arises out of activity that bears a substantial relationship to traditional maritime activity." *Sisson v. Ruby,* 497 U.S. 358, 362 (1990) (citing *Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 675 n.5 (1982)). Significantly, even where a plaintiff establishes such a substantial relationship, the navigable waters where the event occurred must not be beyond the maritime jurisdiction of the United States. "On the side of the maritime boundary adjacent to the United Kingdom of Great Britain and Northern Ireland (British Virgin Islands), the United Sates shall not . . . claim or exercise for any purpose sovereignty, sovereign rights, or jurisdiction with respect to the waters or seabed or subsoil." Treaty on the Delimitation in the Caribbean of a Maritime Boundary Relating to Puerto Rico/U.S. Virgin Islands and the British Virgin Islands (with annex and chart), U.K.-U.S., Nov. 5, 1993, 1913 U.N.T.S. 67 (entered into force June 1, 1995).

Here, the alleged negligence and resulting injury occurred "at Great Harbour, Peter Island," in the British Virgin Islands. (ECF Nos. 1 at 2, 14-1 at 1.) As such, the injury took place outside of the maritime jurisdiction of the United States, as established by international treaty. Accordingly, the Court finds that DeLagarde has not met his burden of proving the Court has federal question, diversity, or admiralty jurisdiction over the matter. "In short, Plaintiff's pleading fails to establish any discernible basis which would allow this Court to

assert subject matter jurisdiction over the action." *Thompson v. Martinez*, No. 10-5990 (WJM), 2012 Dist. LEXIS 100907, at *6 (D.N.J. July 19, 2012) (citing Wright *v. Salem Mem'l Hosp.*, No. 08-5205, 2008 U.S. Dist. LEXIS 87990, at *2 (D.N.J. Oct. 30, 2008)). Consequently, the complaint must be dismissed. Fed. R. Civ. P. 12(h)(3); *Trend Realty Assocs. V. First Federal Sav. & Loan Ass'n*, 657 F.2d 29, 36 (3d Cir. 1981) ("Whenever it appears 'by suggestion of the parties or otherwise' that the court lacks jurisdiction of the subject matter, the action must be dismissed.") (citing Fed. R. Civ. P. 12(h)(3)).

### B. Sufficiency of the Pleadings

Even assuming subject matter jurisdiction were satisfied, the Court must look at the pleadings for sufficiency. The court takes as true the factual allegations of a complaint when considering a motion for default judgment, but "the amount of damages must still be proven." *Saiyed v. Archon, Inc.*, Civil Action No. 16-9530, 2020 U.S. Dist. LEXIS 234234, at *21 (D.N.J. Dec. 14, 2020) (citing *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)). Moreover, Fed. R. Civ. P. 54(c) provides, "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." *See Kennedy Funding, Inc. v. Oracle Bus. Devs. LLC*, Civil Action No. 2012-0009, 2017 U.S. Dist. LEXIS 65579, at *5 n.3 (D.V.I. May 1, 2017) (denying default judgment because the complaint did not seek the same damages that the motion for default judgment sought and the plaintiff did not amend the complaint to correct the deficiency).

Here, the complaint provides no notice of the amounts claimed for damages, and Plaintiff never filed an amended complaint. Significantly, DeLagarde's motion estimates medical expenses totaling $802,851.79—substantially exceeding the undetermined damages claimed in the complaint while also providing no medical bills to substantiate the expenses claimed in the motion. *See Declaration of Kwanza DeLagarde*, ECF No. 14-1 at 2. Moreover, notwithstanding the $802,871.79 total estimated for his expenses, DeLagarde claims that he should be awarded $10,000,000.00 in equitable damages. Because DeLagarde provides no evidence to support his claims for damages, the Court declines to accept as true his estimate as to damages. *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 538 (D.N.J. Apr. 7, 2008) (explaining that while a plaintiff's allegations in a motion for default judgment are

*DeLagarde v. Tours VI, LTD et al.*
Case Number 3:20-cv-0093
Order
Page 10 of 10

generally taken to be true, "the Court should not accept a plaintiff's allegations as to the amount of damages without further evidence") (citing *Comdyne I.*, 908 F.2d at 1149).

## IV.  CONCLUSION

For the reasons set forth above, the Court finds that the complaint fails to establish any basis through which the Court has subject matter jurisdiction over this matter. Moreover, even if the Court had the requisite subject matter jurisdiction over the claim, the Court would deny the motion for insufficiency of the pleadings. An appropriate order follows.

**Dated:** February 28, 2022                                    */s/ Robert A. Molloy*
                                                                                **ROBERT A. MOLLOY**
                                                                                **Chief Judge**